IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ELIEZER RODRÍGUEZ CEDEÑO,**

Plaintiff,

v.                                                      Civil No. 12-1867 (GAG)

**SUR MED MEDICAL CENTER, et al.,**

Defendants.

**OPINION AND ORDER**

On October 12, 2012, Eliezer Rodríguez Cedeño ("Plaintiff") filed the instant action under the court's diversity jurisdiction, alleging medical malpractice against St. Luke's Hospital d/b/a Hospital San Lucas ("St. Luke's or Defendant") and various other defendants. (Docket No. 1.) Pending before the court is Defendant's motion for partial summary judgment. (Docket No. 102.) Defendant seeks a declaration that the Regional Academic Medical Centers Act, P.R. LAWS ANN. tit. 24, § 10031 *et seq*. (2006) limits its liability. (Docket No. 102.) Defendant also requests the law's application as to co-defendants Dr. Jorge Martínez Trabal ("Martínez Trabal"), Dr. García Gubern and Dr. Humberto Simonetti ("Simonetti"). Id. Plaintiff opposed said motion and requested a finding that Defendants are not covered by the liability caps. (See Docket Nos. 112, 113.) As its preliminary issue, Plaintiff seeks prompt resolution of "cap" issue due to its substantial effect on settlement negotiations. (Docket No. 114.)

**I.      Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

**Civil No. 12-1867 (GAG)**                                  2

v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Factual Background**

St. Luke's Hospital and the Ponce School of Medicine became affiliated through the creation of the "HESL-PSM" consortium. (Docket No. 113 ¶ 3.) The consortium's mission is to advance the education and training of residents from different practices and to develop quality medical education in the southwest region of the island. (Docket Nos. 102, 103-8.) On November 11, 2011, Plaintiff arrived at St. Luke's Hospital's emergency room and was admitted as a patient. (Docket Nos. 103 ¶ 4; 113 ¶ 6.) Upon his arrival to St. Luke's Hospital, Plaintiff consented to be evaluated and treated by medical residents. (Docket Nos. 103 ¶ 6; 103-2.) During the course of evaluation and diagnosis, Martinez Trabal and Simonetti intervened directly with Plaintiff. (Docket Nos. 103 ¶ 6; 113 ¶ 6.) At

the moment of the events, both Simonetti and Martínez Trabal were contracted as teaching physicians with the HESL-PSM consortium. (Docket Nos. 103 ¶ 8; 113 ¶ 8.)

St. Luke's claims Plaintiff was admitted directly into the Internal Medicine Residency Program by Dr. Jose Santiago Rodríguez and Dr. Alejandro de los Santos, both residents of that Department. (Docket No. 103 ¶ 7.) St. Luke's also claims that the treatment provided to Plaintiff was at all times conducted by the Regional Academic Medical Center's residency program. (Docket No. 103 ¶ 9.) Plaintiff opposes this fact claiming that it is not supported by the record citations. (Docket No. 113 ¶ 5.)

The parties offer differing procedures to determine whether a patient is considered admitted as a patient of the residency program. A patient of the residency program is considered to have entered the hospital's teaching stream. A patient in the hospital's teaching stream is covered by the cap. Plaintiff argues that to enter the hospital's teaching stream, the admission must be carried out by a physician member of the residency program. (Docket No. 113 ¶ 7.) Plaintiff's argument is based solely on Dr. Luisa Alvarado's testimony. (See Docket No. 103-1.) Plaintiff further argues that the admitting physician criterion is the only mechanism by which a patient may be considered to have entered of the hospital's teaching stream. (See Docket 103-1 at 36, L.L. 2-25.) However, Plaintiff's argument is contradicted by Martínez Trabal's testimony. Martínez Trabal states that, as a member of the teaching faculty, any patient he admits or evaluates during the course of treatment, automatically enters the hospital's teaching stream. (Docket 103-7 at 12- 16.)

### III.    Discussion

#### A.    Caps on Liability

Law No. 136 of July 27, 2006 created "Regional Academic Medical Centers" (the "RMAC Act"), with the purpose of promoting and strengthening educational health programs in Puerto Rico. tit. 24, § 10031 *et. seq*. To this end, the statute extended to covered institutions the liability caps previously conferred by the Claims against the Commonwealth Act, P.R. LAWS ANN. tit. 32, § 3077 (1955) to government employed physicians for alleged acts of malpractice. The statute provides:

> The limitations imposed in [P.R. LAWS ANN. tit. 32, § 3077], shall be extended to the Regional Academic Medical Centers, the students, doctors in graduate training and the faculty members of the latter, for the medical

> procedures practiced in said Centers in the exercise of their [teaching duties.] Said limitation establishes a maximum of seventy-five thousand dollars ($75,000) for damages suffered by a person and up to one hundred fifty thousand dollars ($150,000) when the damages were suffered by more than one (1) person or when there are several causes [of] action to which a single prejudiced party is entitled. The stipulations in the third paragraph of [P.R. LAWS ANN. tit. 26 § 4105] shall also be extended to the consortium.

P.R. LAWS ANN. tit. 24, § 10035.

P.R. LAWS ANN. tit. 24, § 10031(b) defines "Regional Academic Medical Centers" as "[a] group of one or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." The RMAC Act was further amended by Law No. 103 of June 27, 2011 to clarify and limit the statute's protection. The amendment limits the statute's protection to alleged medical malpractice claims that arise within the exercise of the institution's teaching duties. tit. 24, § 10035. It explicitly states that the limits on liability shall extend to "students and physicians in post graduate training and faculty members, for the medical procedures practiced in said centers in the exercise of their teaching duties." Id.[1]

In its statement of motives, Law No. 103 clearly establishes its intent to protect a hospital during its teaching duties. The statute's motive explicitly rejects the automatic application of the liability cap to the Regional Academic Medical Center as a whole. S.16-136 5th Sess. at 2 (P.R. 2011). To this end, the statement of motives also makes reference to P.R. LAWS ANN. tit. 26, § 4105 (1994) which extends the liability caps created by the Claims against the Commonwealth Act, to claims against the University of Puerto Rico for acts rendered by employees, faculty members, residents or students of the Medical Sciences Campus or physicians rendering services under contracts with the University of Puerto Rico. This statute is considered a parallel to the immunity provided to Regional Academic Medical Centers. However, tit. 26, § 4105 did not implement the "teaching duties" clause. Instead, the statutory protection had always been limited to the scope of an employees "duties and functions," as originally established by the Claims against the

---

[1] This amendment predates by several months the alleged tort.

Commonwealth Act. Throughout the statute's existence, the limits on liability have been extended to various governmental entities, but the scope of its protection had remained unaltered.

The "teaching duties" language was added to the RMAC Act to replace the general language of the statute's "duties and functions." This legislative action demonstrates a deliberate intent to narrow the applicability of the cap from the general "duties and functions" of a physician to a physician acting in his teaching capacity. Although the "duties and functions" clause remains applicable to the other entities to which the Claims against the Commonwealth Act applies, the Regional Academic Medical Centers protection was further delineated and limited to "teaching duties." However, the statute lacks a definition of "teaching duties." The court understands the statute to be ambiguous as it fails to further articulate the applicable framework in order to identify when a hospital's alleged negligent acts are to be awarded the statute's protection. The court is unaware of any further interpretation of the statute by the Puerto Rico Supreme Court.

To satisfy Defendants' claim seeking the application of the RMAC caps (Docket No. 102), Defendants must provide evidence to support: 1) that the medical institution falls within the scope of the definition of Regional Academic Medical Centers, and; 2) that the cause of action arises from the exercise of the hospital's teaching duties. Defendants have demonstrated the HESL-PSM consortium classifies as "Regional Academic Medical Center" as defined by the RMAC Act. (Docket Nos. 103 ¶ 3; 103-8.) However, the court finds the evidence provided by St. Luke's to be insufficient to fulfill the "teaching duties" clause of the RMAC Act. Because Defendants provide no evidence to show that the incident took place within the exercise of the hospital's teaching duties, the court finds that Defendants failed to meet the RMAC Act's requirements.

Furthermore, the court rejects Plaintiff's argument as to the admitting physician criteria to be the only determining factor. Such argument fails to promote the statute's legislative intent as to limiting the statutes protection to the hospital's teaching activities, and not all activities carried out within its premises. According to the evidence on record, contradiction exists as to the hospital's guidelines when admitting a patient to the residency program. It remains unclear how St. Luke's personnel introduce patients to the teaching stream. This issue is crucial in order for Defendants

**Civil No. 12-1867 (GAG)**                6

liability to be limited. If Plaintiff's damages occurred within the residency program's teaching activities, Defendants would be entitled to the limits on liability provided by RMAC Act. Viewing the evidence in the light most favorable to Plaintiff, the court cannot apply the liability caps to the present case at this, the summary judgment stage.

### IV.    Conclusion

For the aforementioned reasons, the court **DENIES** Defendants' motion for summary judgment of Docket No. 102 and **DENIES** Plaintiff's motion at Docket No. 114. This case is hereby referred to Magistrate Judge Camille L. Velez Rive for the holding of a pre-trial-settlement conference. The parties should file a JOINT, proposed pre-trial order on or before November 20, 2013. The parties shall engage in further, good-faith negotiations prior to the conference, as Judge Velez Rive may issue any other settlement directives. The court hopes that the instant ruling will aid the parties in reaching an acceptable compromise which will end this litigation.

**SO ORDERED**.

In San Juan, Puerto Rico this 17th day of October, 2013.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge